UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN STAGLIANO, INC., d/b/a EVIL ANGEL PRODUCTIONS, INC. 14141 Covello Street, Unit 8C, Van Nuys, CA 91405, | * * * | |
| Plaintiff, | * | |
| v. | * | CASE NO. _____ |
| JOHN DOES 1-14, | * | JURY DEMAND |
| Defendants. | * * | |

### COMPLAINT

Plaintiff, EVIL ANGEL (the "Angel"), hereby sues defendants, JOHN DOES 1-14 (singularly, each a "Defendant," and collectively, "Defendants"), and alleges:

### NATURE OF THE ACTION

1. Plaintiff seeks damages and injunctive relief arising from Defendants' willful infringement and dilution of Plaintiff's trademark EVIL ANGEL.

### JURISDICTION AND VENUE

**A.    Subject Matter Jurisdiction**

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

**B.    Personal Jurisdiction**

3. Plaintiff is a corporation organized and existing under the laws of the State of California and has its principal place of business located at 14141 Covello Street, Unit 8C, Van Nuys, California 91405.

4. Each Defendant is known to Plaintiff only by an IP address.

5. An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.

6. Unless and until the ISP deletes the data, the ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity.

### i. Plaintiff Used Geolocation Software to Trace the Defendants to This District

7. As set forth on Exhibit A, each of the Defendants' acts of infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District.

8. This Court has personal jurisdiction over each Defendant because the tortious conduct alleged in this Complaint originated in this District, and each Defendant resides in this District or each Defendant has engaged in continuous and systematic business activity in this District.

**C. Venue**

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) a Defendant resides (and therefore can be found) in this District and all of the Defendants reside in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1392 because a significant amount of Defendant's tortious activities occurred in this District.

**JOINDER OF THE DEFENDANTS IS PROPER**

10. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants is properly joined together in this action because, as set forth in more detail below: (a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants, and (b) the infringement complained of herein by each of the Defendants was part of the same series of transactions, involving the exact same piece of a movie distributed via use of the BitTorrent

protocol, and was accomplished by the Defendants acting in concert with each other, and (c) there are common questions of law and fact; indeed, the claims against each of the Defendants are identical and each of the Defendants used the BitTorrent protocol to infringe Plaintiff's trademark.

## GENERAL ALLEGATIONS

### A.   Plaintiffs' EVIL ANGEL® Trademark

11.   Plaintiff is the owner of the world-famous EVIL ANGEL® trademark, U.S. Registration No. 3849824, covering the following goods and services: Digital media, namely, pre-recorded video cassettes, digital video discs, digital versatile discs, downloadable audio and video recordings, DVS, and high definition digital discs featuring adult entertainment.

12.   A true and correct copy of the trademark as registered is pasted below:



The foregoing mark is hereinafter referred to as the "Trademark."  A copy of the registration for the Trademark is attached as Exhibit "B."

13.   Plaintiff has made extensive and continuous use of the Trademark throughout the United States since at least as early as 1989.

14.   By virtue of Plaintiff's extensive investment in, advertising and promotion of movies bearing the Trademark, the Trademark has become widely and immediately recognized by consumers of adult movies throughout the United States.

15.   Plaintiff has developed common law rights in and to the Trademark and the word mark EVIL ANGEL across the United States including in this District.

16. The Trademark and the goodwill that it symbolizes is one of Plaintiff's most important and valuable business assets.

**B.     Plaintiff's Business**

17. Plaintiff not only produces adult entertainment movies but also licenses the Trademark to third party movie producers.

18. Additionally, Plaintiff distributes EVIL ANGEL branded movies produced by third parties to the public.

19. Plaintiff has the exclusive right to distribute all Evil Angel branded movies, including the subject movie, over the internet.

**C.     Defendants' Unauthorized Use of Plaintiff's Trademark**

20. Plaintiff's Trademark was placed on the movie identified on Exhibit A and was distributed (using the BitTorrent protocol) by each of the Doe Defendants to the other Doe Defendants and third party infringers across the country and around the world. The unique Cryptographic Hash Value associated with the copy of the movie that was distributed by the Doe Defendants is also set forth on Exhibit A. As further explained below, all of the Doe Defendants in this case distributed the exact same copy of the exact same movie as evidenced by the one single unique Cryptographic Hash Value. The distribution of the unauthorized copy of the subject movie started with one person called an "initial seeder" and the unauthorized distribution of the subject movie was intentionally continued by each of Doe Defendants.

21. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that people using the BitTorrent protocol account for over a quarter of all internet traffic. The creators and user's of BitTorrent developed their own lexicon for use when talking about BitTorrent; a copy of the BitTorrent vocabulary list is posted on www.Wikipedia.com.

22. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network.  In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

    A.    *Each Defendant Installed a BitTorrent Client onto his or her Computer*

23. Each Defendant installed a BitTorrent Client onto his or her computer.

24. A BitTorrent "Client" is a software program that implements the BitTorent protocol.  There are numerous such software programs including μTorrent and Vuze, both of which can be directly downloaded from the internet.  See www.utorrent.com and http://new.vuze-downloads.com/.

25. Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

    B.    *The Initial Seed, Torrent, Hash and Tracker*

26. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

27. The Client takes the target computer file, the "initial seed," here the subject movie, and divides it into identically sized groups of bits known as "pieces."

28. The Client then gives each one of the computer file's pieces, in this case, pieces of the subject movie, a random and unique alphanumeric identifier known as a "Cryptographic Hash Value" and records these hash identifiers in the torrent file.

29. When another peer later receives a particular piece, the hash identifier for that

piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

30. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

31. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

32. The tracker computer or computers direct a peer user's computer to other peer users' computers that have particular pieces of the file, here the subject movie, on them and facilitates the exchange of data among the computers.

33. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

C. *Torrent Sites*

34. "Torrent sites" are websites that index torrent files that are currently being made available for distribution by people using the BitTorrent protocol. There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, and www.ExtraTorrent.com.

35. Each Doe Defendant went to a torrent site to click on a link to a torrent file associated with the subject movie.

36. The subject movie is branded with Plaintiff's Trademark and the word mark EVIL ANGEL.

D.      *Uploading and Downloading a Work Through a BitTorrent Swarm*

37.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites then other peers begin to download and upload the computer file to which the torrent is linked (here Plaintiff's trademarked movie) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

38.     The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the trademarked movie, to the peers seeking to download the computer file.

39.     Once a peer receives a piece of the computer file, here the trademarked movie, it starts transmitting that piece to the other peers in the swarm.

40.     In this way, all of the peers and seeders are working together in what is called a "swarm."

41.     Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

42.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the EVIL ANGEL branded movie here, upload the torrent onto a torrent site, and deliver a different piece of the movie to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

43.     Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded

the full file, that peer becomes known as "an additional seed" because it continues to distribute the torrent file, here Plaintiff's trademarked movie.

### E. Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing Plaintiff's Trademarked Movie

44.   Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to distribute Plaintiff's trademarked movies.

45.   IPP used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions.

46.   IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified by the Cryptographic Hash Value set forth on Exhibit B (the "Unique Hash Number").

47.   The IP addresses, Unique Hash Value and hit dates contained on Exhibit A accurately reflect what is contained in the evidence logs, and show:

(A)   Each Defendant had copied a piece of Plaintiff's trademarked movie identified by the Unique Cryptographic Hash Value; and

(B)   Therefore, each Defendant's actions was part of the same series of transactions.

48.   Through each of the transactions, each of the Defendant's computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Cryptographic Hash Value.

49.   IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of the pieces using a BitTorrent Client results

in a fully playable digital motion picture that contains an exact counterfeit copy of Plaintiff's Trademark as well as the word mark EVIL ANGEL.

50. Defendants' conduct was undertaken with full knowledge of Plaintiff's ownership and use of the Trademark, thus it was a knowing, deliberate and malicious infringement upon Plaintiff's trademark rights, and a deliberate misappropriation of the goodwill associated with Plaintiff's marks.

51. All conditions precedent to the filing of this action have been satisfied or waived.

52. Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

### COUNT I - INFRINGEMENT UNDER 15 U.S.C. § 1114(1)(a)

53. The allegations contained in paragraphs 1-52 are hereby re-alleged as if fully set forth herein.

54. In violation of 15 U.S.C. 1114(1)(a), each Doe Defendant, without the consent of Plaintiff, used in commerce a counterfeit of Plaintiff's registered Trademark in connection with the distribution of the subject movie, and such use is likely to cause confusion, or to cause mistake or to deceive.

55. Each Doe Defendants' infringement was committed intentionally and willfully or with reckless disregard for Plaintiff's rights as a trademark owner.

56. Plaintiff has been damaged by each Doe Defendant's tortious conduct.

57. By such wrongful acts, each Doe Defendant has caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff's and to the goodwill associated with the Trademark, including loss of customers, lost sales and lost profits.

58. Plaintiff does not have an adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(A)   Permanently enjoin each Doe Defendant and all other persons who are in active concert or participation with each Defendant from continuing to distribute the subject movie;

(B)   Order that each Doe Defendant delete and permanently remove the torrent file associated with the subject movie from each of the computers under each such Defendant's possession, custody or control;

(C)   Order that each Doe Defendant delete and permanently remove the subject movie each Defendant has on the computers under Defendant's possession, custody or control;

(D)   Award Plaintiff three times the amount of its actual damages as provided for by 15 U.S.C. § 1117(b)(1), as well as prejudgment interest on such amount at the annual rate established by section 6621(a)(2) of Title 26.

(E)   Award Plaintiff statutory damages against each Doe Defendant pursuant 15 U.S.C. § 1117 in amount not less than $1000 nor more than $2,000,000;

(F)   Award Plaintiff its attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1117(a)&(b); and

(G)   Grant Plaintiff any other and further relief this Court deems just and proper.

## COUNT II - CONTRIBUTORY TRADEMARK INFRINGEMENT

59.   The allegations contained in paragraphs 1-52 are hereby re-alleged as if fully set forth herein.

60.   Each of the Doe Defendants supplied the subject movie to the other Doe Defendants and third parties with the knowledge that the other Doe Defendants and third parties would directly infringe Plaintiff's registered and common law trademark rights by distributing the subject movie in commerce without Plaintiff's permission.

61.   Each Doe Defendants' contributory infringement was committed intentionally and willfully or with reckless disregard for Plaintiff's rights as a trademark owner.

62. Plaintiff has been damaged by each Doe Defendant's tortious conduct.

63. By such wrongful acts, each Doe Defendant has caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff's and to the goodwill associated with the EVIL ANGEL trademark, including loss of customers, lost sales and lost profits.

64. Plaintiff does not have an adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin each Doe Defendant and all other persons who are in active concert or participation with each Defendant from continuing to distribute the subject movie;

(B) Order that each Doe Defendant delete and permanently remove the torrent file associated with the subject movie from each of the computers under each such Defendant's possession, custody or control;

(C) Order that each Doe Defendant delete and permanently remove the subject movie each Defendant has on the computers under Defendant's possession, custody or control;

(D) Award Plaintiff three times the amount of its actual damages as provided for by 15 U.S.C. § 1117(b)(1), as well as prejudgment interest on such amount at the annual rate established by section 6621(a)(2) of Title 26.

(E) Award Plaintiff statutory damages pursuant 15 U.S.C. § 1117 in amount not less than $1000 nor more than $2,000,000;

(F) Find that the Doe Defendants are jointly and severally liable for the infringement of Plaintiff's Trademark;

(G) Award Plaintiff its attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1117(a)&(b); and

(H) Grant Plaintiff any other and further relief this Court deems just and proper.

## COUNT III – FALSE DESIGNATION OF ORIGIN

65. The allegations contained in paragraphs 1-52 are hereby re-alleged as if they are fully set forth herein.

66. Plaintiff is the owner of the Trademark and the common law rights associated with the word mark EVIL ANGEL.

67. Without Plaintiff's consent, each Doe Defendant used the Trademark and the word mark EVIL ANGEL in commerce by distributing the subject movie with the Trademark affixed to it to the other Doe Defendants and third parties.

68. In violation of 15 U.S.C. § 1125(a)(1)(A), each Doe Defendant's use of the Trademark and word mark EVIL ANGEL is likely to is likely to cause confusion, or to cause mistake, or to deceive Doe Defendants and third parties as to the origin, sponsorship, or approval of Plaintiff's goods or commercial activities by another person.

69. Each Doe Defendants' infringement was committed intentionally and willfully or with reckless disregard for Plaintiff's rights as a trademark owner.

70. Plaintiff has been damaged by each Doe Defendant's tortious conduct.

71. By such wrongful acts, each Doe Defendant has caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff's and to the goodwill associated with the EVIL ANGEL trademark, including loss of customers, lost sales and lost profits.

72. Plaintiff does not have an adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin each Doe Defendant and all other persons who are in active concert or participation with each Defendant from continuing to distribute the subject movie;

(B) Order that each Doe Defendant delete and permanently remove the torrent file

associated with the subject movie from each of the computers under each such Defendant's possession, custody or control;

  (C) Order that each Doe Defendant delete and permanently remove the subject movie each Defendant has on the computers under Defendant's possession, custody or control;

  (D) Award Plaintiff its actual damages as provided for by 15 U.S.C. § 1117(a);

  (E) Find that this is an exceptional case and award Plaintiff its attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a); and

  (F) Grant Plaintiff any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

        Respectfully submitted,
        MALIBU MEDIA, LLC.
        PLAINTIFF

        By: /s/*Jon A. Hoppe*
        Jon A. Hoppe, Esquire #6479
        Counsel
        Maddox, Hoppe, Hoofnagle &
         Hafey, L.L.C.
        1401 Mercantile Lane #105
        Largo, Maryland 20774
        (301) 341-2580